

## NONCOMPETITION AGREEMENT

This Employee Noncompetition Agreement ("Agreement") is entered into as of **Nov 11**, 2013 (the "Effective Date") by and between Jump Operations, LLC on behalf of itself and on behalf of its affiliates and any future affiliates, successors or assigns (collectively, the "Company"), and Chase Lochmiller ("me" or "I"). (Employee and Company are each a "Party" and collectively the "Parties" and the employment relationship between the Company and me shall be referred to herein as the "Relationship"). In consideration for the Company's agreement to employ and compensate me, grant me access to its proprietary information, provide specialized training and development to me, and for other good and valuable consideration, the sufficiency of which I acknowledge, the Company and I acknowledge and agree as follows:

1. **Factual Acknowledgments**

The Company hereby represents and I hereby recognize and acknowledge the following:

   A. The Company is engaged in, among other things, the business of trading certain products including, without limitation, equities, options, futures, securities, energy, electricity, currencies and related financial products, on a proprietary basis.

   B. The Company trades on exchanges and with counterparties located throughout the world, and due to the nature of the Company's business, physical presence on an exchange or in a particular locale is not necessary.

   C. Solely by virtue of my employment with the Company, I have acquired and/or will acquire confidential and/or proprietary information belonging to the Company, and but for this association with the Company, I would not have had access or continue to have access to such confidential and/or proprietary information.

   D. The nature of my employment with the Company exposes or will expose me to confidential and/or proprietary information that is key to the Company's competitive advantage and business and which would cause irreparable harm to the Company if used or disclosed.

2. **Covenant Not to Compete**

I agree to refrain from directly or indirectly engaging in Competitive Activity, including assisting another to engage in Competitive Activity, at all times during my employment with the Company and during the Non-Compete Period.

   A. For the purposes of this Agreement, "Non-Compete Period" means the zero (0) to twelve (12) month period following the termination of my employment with the Company ("Separation Date"), as elected by the Company within ten (10) business days following the Separation Date.

**EXHIBIT 1**

B. For the purposes of this Agreement, "Competitive Activity" includes engaging in any of the following activities with or for the benefit of a Competitive Entity:

   i. Becoming an employee in a similar capacity, providing similar services, or with similar responsibilities to the services provided by me to the Company; or

   ii. Becoming an advisor or consultant in a similar capacity, providing similar services, or with similar responsibilities to the services provided by me to the Company; or

   iii. Directly or indirectly utilizing or developing or assisting in the development of quantitative analytics that are similar to or derived from quantitative analytics that I utilized or developed or had access to while I was employed by the Company; or

   iv. Preparing to directly or indirectly utilize or develop quantitative analytics that are similar to or derived from quantitative analytics that I utilized or developed or had access to while I was employed by the Company; or

   v. Directly or indirectly overseeing one or more individuals that utilize or develop quantitative analytics that are similar to or derived from quantitative analytics that I utilized or developed or had access to while I was employed by the Company; or

   vi. Directly or indirectly becoming a partner or principal in, or directly or indirectly forming, or acquiring greater than five percent (5%) equity, voting, revenue, income, profit, loss or other economic interest in, a Competitive Entity.

C. For the purposes of this Agreement, "Competitive Entity" shall specifically include, but is not limited to, Allston Trading, LLC, ATD, Breakwater Trading, LLC or associated and/or merged companies including but not limited to Peak 6 and Breakwater Capital, LLC, Citadel LLC, DRW Holdings, LLC, EWT Trading, LLC, EWT, LLC, Gelber Group, LLC, Getco (Global Electronic Trading Company), IAT, IMC Group, Infinium Capital Management, JED Capital, Lime Brokerage, LLC, Octeg, LLC, Optiver, QuantLab Financial, LLC, Ronin Capital LLC, Sun Trading LLC, Swift Trade /Biremis Corp, Tradebot Systems, Inc., Tibra Capital, Timber Hill LLC, Tower Research Capital, LLC, Trading Technologies International, Inc., WorldQuant, LLC, or any affiliate of the above. "Competitive Entity" shall also include any business that:

   i. Engages in, or is in the process of developing, or preparing to engage in, any of the trading strategies or any other business activities identical or similar to any of those engaged in by the Company, or

   ii. Engages in, or is in the process of developing, or preparing to engage in, high frequency or algorithmic transactions in any way involving any electronically tradeable product or commodity through any exchange, electronic trading venue or platform in which the Company engaged or evaluated engaging in during the twelve (12) months preceding the Separation Date or in which the Company had plans or was preparing to, but had yet to engage in, as of the Separation Date, or

   iii. Engages in, or is in the process of developing, or preparing to engage in the creation of trading software and/or trading applications, or

    iv.   Owns or controls a greater than five percent (5%) interest in any entity that engages in any of the trading strategies or any other businesses activities identical or similar to those engaged in by the Company.

3. **Team Member Restriction**

I agree that for the period of six months following the end of my employment with the Company or, if the Company elects a Non-Compete Period, then six months following the end of my Non-Compete Period, I will not accept or commence employment from or with any Competitive Entity which has, in the six (6) months preceding the termination of my employment with the Company, employed, entered into an employment agreement with, or otherwise procured the services of any Former Team Member to perform a Competitive Activity. For purposes of this Agreement, "Former Team Member" means any person who at any time during the six month period immediately preceding the termination of my employment was a member of the same trading group or department (if I was not a member of a trading group) as I was at the Company.

4. **At-Will Employment; Termination of Employment; Non-Compete Period Compensation**

    A.  At-Will Employment   Employee and the Company understand and acknowledge that this Agreement does not alter the Parties' at-will employment relationship, as defined under applicable law, such that either party may terminate the relationship at any time for any reason or no reason. Regardless of the manner by which Employee's employment with the Company is terminated, including whether terminated by Employee or by the Company with or without Cause, such termination shall in no way effect, limit or alter Employee's continuing obligations under this Agreement including, without limitation, Employee's Covenant Not to Compete as set forth in Paragraph 2 of this Agreement.

    B.  Termination by Employee   If Employee voluntarily terminates the employment relationship, the Company agrees to compensate Employee during the Non-Compete Period at a periodic rate equal to seventy-five percent (75%) of one-twenty-fourth of Employee's total compensation for the one (1) year period prior to termination of employment, excluding compensation from liquidation of any trading account and compensation from any sign on bonus, not to exceed **$10,000** per month, provided Employee does not engage in any Competitive Activity for the duration of the Non-Compete Period. Any payment to Employee from Company made under this Paragraph during the Non-Compete Period will be made on a semi-monthly basis consistent with the Company's payroll schedule. All such payments are subject to applicable taxes.

    C.  Termination by the Company Without Cause   If the Company terminates the employment relationship without Cause, the Company agrees to compensate Employee during the Non-Compete Period at a periodic rate equal to ninety percent (90%) of one twenty-fourth of Employee's total compensation for the one (1) year period prior to termination of employment, excluding compensation from liquidation of any trading account and compensation from any sign on bonus, not to exceed **$15,000** per month, provided Employee does not engage in any Competitive Activity for the duration of the Non-Compete Period. Any payment to Employee from Company made under this Paragraph during the Non-Compete Period will be made on a semi-monthly basis consistent with the Company's payroll schedule. All such payments are subject to applicable taxes.

D. <u>Termination by the Company With Cause</u>   If the Company terminates the employment relationship for Cause, Employee acknowledges and agrees that Employee will not be entitled to, nor shall Employee receive from the Company, any payment or compensation during the Non-Compete Period.

E. <u>Cause</u>   For the purposes of this Agreement, "Cause" shall exist, such that the Company may terminate Employee with Cause, if Employee: (i) is convicted of any felony, or of any crime involving dishonesty, breach of trust, or physical or emotional harm to any person; (ii) steals or otherwise misappropriates Company property including, without limitation, information that is proprietary to the Company; or (iii) engages in Competitive Activity during his employment with the Company.

5. **Modification by Tribunal**

If a court or arbitration panel determines that the time and/or geographic restrictions imposed upon me as set forth in Paragraph 2 of this Agreement are unenforceable in part, such court or arbitration panel may modify this Agreement so as to impose upon me such restrictions of time and geographic scope as the court or arbitration panel shall find reasonable and proper under the circumstances. All remaining provisions of this Agreement not modified by the court or arbitration panel shall remain in full force and effect.

If a court or arbitration panel determines that the time and/or geographic restrictions imposed upon me as set forth in Paragraph 2 of this Agreement are void or unenforceable in their entirety, all obligations of the Company to make any payment to me during the Non-Compete Period pursuant to Paragraphs 4.B. and 4.C., above, will terminate.

6. **Notice to Future Employers**

During the twelve (12) months following the end of my employment with the Company, I (i) will notify any new employers of my obligations under this Agreement prior to commencing employment with such new employers; and (ii) consent to notification by the Company to my new employers about my obligations under this Agreement.

7. **Reasonable Terms**

I understand that the provisions of this Agreement will limit my ability to earn a livelihood in an identical or similar business for the duration of the Non-Compete Period. I understand the global nature of Company's business and the efforts the Company undertakes to develop, preserve, and protect its business and competitive advantage. In light of the need to protect the Company's competitive position and confidential and proprietary information, I agree that the scope and duration of the restrictions and limitations contained in this Agreement are reasonable to protect the legitimate business interests of the Company. I further acknowledge that these restrictions apply regardless of the reason for the termination of my employment relationship with the Company.

8. **Breach**

If I breach any provision of this Agreement, such breach by me shall constitute a forfeiture of all compensation and benefits to me set forth herein. In the event any such compensation or benefits have

already been conveyed to me as of the time of my breach, I agree to immediately return and/or repay the same to the Company, including any and all taxes withheld by the Company and paid on my behalf. In addition, if I breach any provision of this Agreement, the Non-Compete Period shall be extended by a period of time equal to that period beginning when such violation commences and ending when the activities constituting such violation terminate. This provision does not replace or limit any other remedies set forth herein or that the Company may have at law or in equity, including monetary damages.

9. **Dispute Resolution, Law and Jurisdiction**

    A. <u>Governing Law</u>. The validity, interpretation, construction and performance of this Agreement shall be governed by the laws of the State of Illinois, without giving effect to the principles of conflict of laws.

    B. <u>Remedies</u>. I recognize and understand that a breach of any terms contained in this Agreement would cause immediate and irreparable injury to the Company for which there may be no adequate remedy at law. If the Company, in its sole discretion, determines that I have breached or threaten to breach any provision of this Agreement, the Company shall be entitled to seek emergency, temporary and/or preliminary relief and enforcement of this Agreement in any court of competent jurisdiction by means of a decree of specific performance, an injunction, and/or any other form of equitable relief without the necessity of posting a bond in connection with any relief sought or granted. This provision does not replace or limit any other remedies set forth herein or that the Company may have at law or in equity, including monetary damages.

    C. **<u>Arbitration</u>. Subject to the Company's right to seek emergency, temporary and/or preliminary relief in court, all claims or controversies arising out of or relating to this Agreement, or the breach thereof, or in any way arising out of or relating to the Relationship shall be settled by arbitration before a panel of three arbitrators and administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. If arbitration before any other forum is mandatory, then the arbitration shall be settled instead by such other mandatory arbitration forum in accordance with its rules. The arbitration shall be conducted in Chicago, Illinois. The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this Agreement. THE PARTIES HEREBY AGREE TO WAIVE THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY.**

    D. <u>Expenses</u>. In addition to any and all other remedies available at law or in equity in any lawsuit or arbitration hereunder, I agree to compensate the Company for all costs and expenses, including, without limitation, reasonable attorneys' fees, incurred as a result of my breach or threatened breach of this Agreement.

    E. <u>JURISDICTION</u>. I HEREBY IRREVOCABLY AND UNCONDITIONALLY (I) CONSENT TO SUBMIT TO THE JURISDICTION OF THE COURTS OF THE STATE OF ILLINOIS AND OF THE UNITED STATES OF AMERICA AND TO THE JURISDICTION OF THE RELEVANT ARBITRAL FORUM LOCATED IN COOK COUNTY IN THE STATE OF ILLINOIS FOR ANY ACTION, SUIT, ARBITRATION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, (II) WAIVE ANY OBJECTION TO THE LAYING

OF VENUE OF ANY SUCH ACTION, SUIT, ARBITRATION OR PROCEEDING IN ANY SUCH COURTS AND (III) WAIVE AND AGREE NOT TO PLEAD OR CLAIM THAT ANY SUCH ACTION, SUIT, ARBITRATION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

10. **General Provisions.**

    A. <u>Entire Agreement</u>. This Agreement sets forth the entire agreement and understanding between the Company and me relating to the subject matter herein and supersedes all prior agreements, discussions, understandings, or representations, either oral or in writing, relating to this subject matter. No modification or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the Party to be charged. No subsequent change or changes in my duties, obligations, rights or compensation will affect the validity or scope of this Agreement. There are no oral statements, representations, inducements, warranties, or undertakings modifying or affecting the terms set forth herein.

    B. <u>Other Employee Agreements</u>. In the event of a conflict between this Agreement and any other Agreements between the Company and me, including without limitation my Confidential and/or Proprietary Information Agreement and/or Non-Solicitation Agreement executed at any time by me, the terms of this Agreement shall control.

    C. <u>Severability and Enforcement</u>. Without limiting, and subject to the terms of, Paragraph 5 ("Modification by Tribunal"), whenever possible, each provision of this Agreement shall be interpreted in a manner as to be effective and valid under applicable law, but if any provision or portion thereof shall be held to be prohibited or invalid under applicable law, such provision or portion thereof shall be ineffective only to the extent of such prohibition or invalidity, without invalidating or affecting the remainder of such provision or any of the remaining provisions of this Agreement. In addition, the Parties hereby agree and request that if a court or arbitration panel determines that any provision or portion thereof is prohibited or invalid that the court or arbitration panel reform or replace such prohibited or invalid provision or portion thereof with a valid and enforceable provision or portion that comes as close as possible to expressing the intention of the prohibited or invalid provision or portion.

    D. <u>Survival</u>. The provisions of this Agreement shall survive the termination of the Relationship and the assignment of this Agreement by the Company to any successor in interest or other assignee.

    E. <u>Successors and Assigns</u>. This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.

    F. <u>Third Party Beneficiaries</u>. I acknowledge that each affiliate of Jump Operations, LLC is a third party beneficiary of this Agreement and may enforce its and Jump Operations, LLC's rights under this Agreement and that Jump Operations, LLC may enforce the rights of its affiliates hereunder in addition to its own rights.

G. Construction. The various titles of the paragraphs herein are used solely for convenience and shall not be used for interpreting or construing any word, clause, section, paragraph, or subparagraph of this Agreement. The language used in this Agreement shall be deemed to be the language chosen by the Parties hereto to express their mutual intent, and no rule of strict construction shall be applied against any Party. In the event of any ambiguity in or dispute regarding the interpretation of this Agreement and the terms set forth herein, this Agreement shall not be construed against any Party, both of which shall be deemed to have drafted this Agreement.

H. Notices. All notices, demands or other communications to be given or delivered under or by reason of the provisions of this Agreement shall be in writing and shall be delivered personally or mailed by certified or registered mail, return receipt requested, or delivered by overnight courier service, to the following addresses, or such other addresses as shall be given by notice delivered hereunder, and shall be deemed to have been given upon delivery, if delivered personally, five (5) days after mailing, if mailed, or one (1) business day after timely delivery to the overnight courier service, if delivered by overnight courier service:

If to the Company:

Ms. Tessa Wendling
General Counsel
Jump Operations, LLC
600 W. Chicago Ave., Suite 825
Chicago, IL 60654

If to the Employee:
Name: Chase Lochmiller
Address: 620 Broadway Apt. 2R
New York, NY 10012

I. Counterparts; Delivery. This Agreement, and any amendments hereto, may be executed by each of the Parties on identical counterparts, including counterparts sent by facsimile or by e-mail in PDF or similar format, any and all of which may contain the signature of less than all of the Parties, and all of which shall be construed together as a single instrument and shall have the same effect as if the Parties had signed the same copy. At the request of any Party, the other Party hereto will re-execute original forms thereof and deliver them to the other Party. No Party hereto will raise the use of a facsimile machine or e-mail to deliver a signature or the fact that any signature or agreement or instrument was transmitted or communicated through the use of a facsimile machine or e-mail as a defense to the formation or enforceability of a contract and each such Party forever waives any such defense.

J. Voluntary Acceptance. By signing this Agreement, I acknowledge that:

i. This Agreement has been written in understandable English;

ii. I have carefully read and fully understand all provisions of this Agreement;

iii. I knowingly and voluntarily agree to all of the terms set forth in this Agreement;

iv. I knowingly and voluntarily agree to be legally bound by this Agreement;

v. I have signed this Agreement of my own free will and without duress or constraint and without representations not expressly set forth herein and not relying on any asserted duty or obligation by the Company or any other person to disclose information in connection herewith; and

vi. I understand that the Company recommends that I seek the advice of independent legal counsel in connection with this Agreement and I confirm that I have had the opportunity to consult with independent legal counsel before signing this Agreement.

AGREED TO AND ACCEPTED BY:

Jump Operations, LLC

By: _____
Beth Bonanni, Director of Recruiting

Date: 10/15/13

Chase Lochmiller

By: _____
Chase Lochmiller

Date: 11/11/13